IN THE UNITED STATES DISTRICT COURT
OF THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| EPICREALM, LICENSING, LLC | § § | |
| v | § § | No. 2:05CV163 |
| AUTOFLEX LEASING, INC., ET AL. | § § | |
| EPICREALM, LICENSING, LLC | § § | |
| v | § § | No. 2:05CV356 |
| FRANKLIN COVEY CO., ET AL. | § § | |

## MEMORANDUM ORDER

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Plaintiff epicRealm Licensing, LP ("Plaintiff") filed objections to the Report and Recommendation of the Magistrate Judge. The Court conducted a *de novo* review.

## BACKGROUND

[E]picRealm Licensing, LLC ("Plaintiff" or "epicRealm") sued The Macerich Company ("Macerich") and other unrelated companies (collectively "Defendants"), alleging Defendants are infringing United States Patent Nos. 5,894,554 (the "'554 patent") and 6,415,335 (the "'335 patent") (collectively the "Patents"). The Patents allegedly encompass certain systems and methods to dynamically generate web pages. Plaintiff's Patents purport to cover a process in which a web server

1

interacts with a page server and other data sources to generate dynamic web pages that are subsequently transmitted over the Internet.

## REPORT AND RECOMMENDATION

In her Report and Recommendation dated February 21, 2007, the Magistrate Judge recommended Macerich's Motion for Summary Judgment of No Infringement be granted and that Plaintiff's above-entitled and numbered cause of action against Macerich be dismissed with prejudice. Specifically, regarding direct infringement, the Magistrate Judge found no genuine issues of material fact regarding whether Macerich performs any of the steps of the claimed methods. Therefore, the Magistrate Judge concluded Macerich cannot be liable for direct infringement of those claims as a matter of law. Regarding indirect infringement (inducing infringement), the Magistrate Judge found insufficient evidence to demonstrate that Macerich had specific intent to cause the acts which constitute the infringement. The Magistrate Judge further found there are no genuine disputes of material fact on the issue of whether Macerich intended to induce infringement. Therefore, the Magistrate Judge concluded Macerich cannot be liable for active inducement as a matter of law.

## PLAINTIFF'S OBJECTIONS

Plaintiff filed objections to the Magistrate Judge's recommendation that Macerich's motion for summary judgment of no infringement be granted. Specifically, Plaintiff raises the following three primary objections to the Magistrate Judge's Report and Recommendation. First, Plaintiff asserts the Magistrate Judge's direct infringement analysis improperly applied the statutory mandate of 35 U.S.C. § 271(a) by focusing only on whether Macerich directed or controlled its web hosting services provider – Red 5 Interactive, Inc. ("Red 5") – in making one of the infringing systems named in Plaintiff's Preliminary Infringement Contentions ("PICs") – the system including Apache

and Tomcat software. According to Plaintiff, making the software is only one way to infringe Plaintiff's patents under 35 U.S.C. § 271(a), and Macerich is also liable for infringement by using the infringing systems and methods. Plaintiff argues the Magistrate Judge's analysis ignored evidence showing that Macerich used the infringing combination of Apache and Tomcat software.

Second, Plaintiff contends the Magistrate Judge incorrectly required Plaintiff to produce evidence that Macerich directed Red 5 to "customize" the infringing combination of Apache and Tomcat software. According to Plaintiff, its PICs accuse Macerich of infringement by employing a system that used an Apache web server in combination with a Tomcat page server, and neither Plaintiff's patents nor its PICs require that Macerich "customize" the Apache/Tomcat combination. Again, Plaintiff argues the *use* of the combination, by itself, is sufficient for infringement.

Third, Plaintiff asserts the Magistrate Judge's analysis of infringement by inducement improperly applied the statutory mandate of 35 U.S.C. § 271(b) by again focusing only on whether Macerich induced Red 5 in making the infringing system. Plaintiff states the analysis did not consider evidence that Macerich induced web patrons to use the allegedly infringing combination of Apache and Tomcat software when browsing Macerich's websites.

## *DE NOVO* REVIEW

The Court first notes that Plaintiff, in its objections, attempts to raise new factual and legal issues by putting forth entirely new arguments that have never before been briefed. Through four separate legal briefs arguing its position and at oral argument, Plaintiff has focused on Macerich's connection and dealings with Red Five as its sole basis for arguing Macerich is liable for the web servers operated by Red Five. In that regard, Plaintiff relied on cases like *Hill v. Amazon.com*, 2006 WL 151911 (E.D. Tex. 2006), which base liability for the actions of one party on a another party

according to the connection and dealings between the two.  Not once in its briefs or at oral argument did Plaintiff cite *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), to argue that Macerich could use the accused Apache and Tomcat software without actually controlling it.  The basis for this argument is entirely new.

Likewise, this is the first time that Plaintiff has alleged that Macerich induces visitors to its web sites to use the accused Apache and Tomcat software.  In the briefing before the Magistrate Judge, Plaintiff discussed Red Five's use of the software in providing web hosting to Macerich as the only alleged direct infringement underlying its allegations of inducement. In its objections, Plaintiff has changed its position to argue that its claims of inducement are supported by a different type of infringing use. Again, this is an entirely new argument, and it is unsupported by the law.

The Fifth Circuit has held that issues raised for the first time in objections to a Report and Recommendation of a magistrate judge are not properly before the district judge.  *United States v. Armstrong,* 951 F.2d 626, 630 (5th Cir.1992); *see also Finley v. Johnson*, 243 F.3d 215, 219 n. 3 (5th Cir. 2001). Thus, the Court is under no obligation to address the arguments raised for the first time in Plaintiff's objections.  Even if the Court were under an obligation to address the new arguments, the Court would find Plaintiff's objections without merit for the following reasons.

Contrary to Plaintiff's first objection, the Report and Recommendation did address the issue of Macerich's "use" of the accused combination of Apache and Tomcat software.  The Magistrate Judge specifically found that "Macerich does not take part in or control the operation of the Accused Systems. Instead, the Accused Systems are owned, operated, managed, and controlled by Red Five. . . ." Report and Recommendation at pg. 25. "Operation" is clearly the "use" that is implicated when dealing with patents directed to "a method and apparatus for managing dynamic web page

generation requests" and accusations directed to web server computers and software.

The Magistrate Judge found that Macerich did not take part in operating the accused software, or in selecting it, or in configuring it and putting it to use. Report and Recommendation at pgs. 25-26. Instead, Red Five, and not Macerich, used the accused software in the course of its business as a web hosting provider. *Id.* at pg. 26. Having drawn that conclusion, the Report and Recommendation analyzes whether Macerich controlled Red Five's actions so as to be liable for them, and it correctly concludes that Macerich did not. *Id.* at pg. 33.

Macerich does not use the accused Apache and Tomcat software because it is not responsible for running that software to manage incoming requests to a web server. The patents in suit "claim[] a method and apparatus for managing dynamic web page generation requests." '554 Patent at col. 2, lines. 17-19. The claims, in turn, recite the steps involved in managing web page requests: intercepting a request, routing a request, dispatching a request, etc. *See, e.g.,* claim 1 of the '554 Patent. Likewise, the apparatus claims recite structure configured, or software programmed, to carry out those steps. *See, e.g.,* claim 9. Thus, in the context of the claimed invention, the allegedly infringing "use" of Apache and Tomcat must be the operation of the software to manage dynamic web page requests. That use is made by a web hosting provider, and not by the party that makes a request or sends information to a web server. The web hosting provider, and not the requester, manages a request, and here, Red Five, and not Macerich, runs the Apache and Tomcat software to manage incoming requests on its web servers.

Similarly, Macerich does not use the Apache and Tomcat software when it uses the Property Site Manager ("PSM") tool. The tool is simply a web-based application, like web-based email or any number of other dynamic web pages. To access the tool, Macerich must log in and make a request

to Red Five's server, which processes the request just like any other request for a dynamic web page. Macerich does not run Apache and Tomcat to manage this request. Red Five runs Apache and Tomcat to manage the requests that Macerich sends to the web server, and Apache and Tomcat respond and present the PSM tool according to the configuration and operation set by Red Five. Report and Recommendation at pgs. 25-26. Macerich cannot affect that configuration or operation through the PSM tool.

Despite Plaintiff's arguments to the contrary, the issue of control is central to determining whether a party is liable for "using" a claimed invention. In *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282 (Fed. Cir. 2005), the Federal Circuit stated that "use" of a claimed system under 35 U.S.C. § 271(a) occurs at "the place at which the system as a whole is put into service, i.e., the place where control of the system is exercised and beneficial use of the system obtained." *Id.* at 1317. In *NTP*, the defendant's customers were "users" of a claimed system for transmitting messages because they controlled the transmission of messages within the system by manipulating a system component. *Id.* In particular, the defendant's customers operated handheld Blackberry devices, and by "manipulating" those devices, the system would transmit or deliver messages at the time chosen and as directed by the defendant's customers. *Id.* Importantly, the claimed system in *NTP* was directed to a system for the transmission of messages, *see id.* at 1294-95, and that is exactly the function that the defendant's customers controlled. *Id.* at 1317. Thus, the defendant's customers were users of the system.

Unlike the Blackberry user in *NTP*, Macerich cannot control Apache and Tomcat to manage incoming web page requests. When Macerich logs in and accesses the PSM tool, Apache and Tomcat manage and respond to the request according to the configuration and operation set by Red Five.

Macerich cannot control the method or process employed to manage and respond to the request. Macerich merely submits requests to the web server for the PSM tool, but the management of the request by Apache and Tomcat is controlled entirely by Red Five. Red Five, and not Macerich, is like the Blackberry user because Red Five runs Apache and Tomcat in the context of the patent claims to receive and respond to Macerich's requests. Thus, under *NTP*, Macerich is not a "user" of the accused Apache and Tomcat software, and Macerich cannot be directly liable for infringement.

Regarding Plaintiff's second objection, the Court finds the Magistrate Judge correctly considered the issue of customization in determining whether Macerich controlled Red Five's use and operation of Apache and Tomcat. The Magistrate Judge correctly considered this evidence and concluded that Macerich did not control Red Five's use of the software.

Finally, regarding Plaintiff's third objection regarding Macerich's liability for inducing infringement, the Court finds there is no act of infringement because visitors to Macerich's web site are not "using" the Apache and Tomcat software within the meaning of § 271(a). Persons who send requests to a web server and receive a response do not control the operations of the Apache and Tomcat software in managing incoming web page requests. Instead, Red Five, as the web host, operates the software which manages and responds to the incoming requests according to the configuration set by Red Five. Visitors are not allowed to control the manner in which the web site manages a request or generates a response. It is this method of managing and responding to requests, and not a method of sending a request and receiving a response, that is claimed by the patents in suit. '554 Patent at col. 2, lines 17-19 ("[T]he present invention claims a method and apparatus for managing dynamic web page generation requests."). Thus, it is the method of managing requests which must be controlled if it is to be used, and that control is exercised by Red Five, not by visitors

to Macerich's web site.

Thus, the web site visitors are not users of the patented system. *See NTP*, 418 F.3d at 1317. Instead, they are like people who send e-mail to a Blackberry user from a desktop computer and receive a response. Those people may be indirect beneficiaries of the claimed system, but they are not its "users" under § 271(a) because somebody else exercises control. *Id.* Accordingly, Macerich cannot be liable for inducing infringement by its web site visitors because those visitors are not, in fact, infringing users of the accused software. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993).

In addition, Macerich cannot be liable for inducing infringement because it neither encourages web visitors to use Apache and Tomcat nor intends to cause actual infringement. The intent requirement for inducement requires more than just intent to cause the acts that produce direct infringement. *DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006). A plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements; the requirement that the alleged infringer knew or should have known his actions would induce actual infringement necessarily includes the requirement that he or she knew of the patent. *Id.* at 1304. Inducement "requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities." *Id.* at 1306. In *DSU*, the Federal Circuit approved a jury finding that there was no intent to cause infringement where the alleged inducer did not believe the accused product infringed despite knowing the allegations of infringement by the patentee. *Id.*

Here, Macerich does not induce infringement because it does not actively encourage the use

8

of Apache and Tomcat nor does it intend to cause actual infringement. Macerich only provides web pages which web users may visit. Macerich has no control over the selection or operation of the software that Red Five uses to serve Macerich's web pages. Macerich does not even control whether its web pages are programmed in the language that can be processed by Tomcat, which is Java.  All of those decisions are within Red Five's "domain of control." Report and Recommendation at pg. 26 (*citing* Chrystal Depo. at pgs. 231-232).  Thus, Red Five, and not Macerich, is solely responsible for the use of Apache and Tomcat.

Plaintiff's objections are without merit.  The Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct.  Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court.  Accordingly, it is hereby

**ORDERED** that Macerich's Motion For Summary Judgment of No Infringement (Civil Action No. 2:05-CV-163, Dkt. No. 159; Civil Action No. 2:05-CV356, Dkt. No. 188) is **GRANTED.**  It is further

**ORDERED** that Plaintiff's above-entitled and numbered cause of action against The Macerich Company is **DISMISSED WITH PREJUDICE**.

**SIGNED this 26th day of June, 2007.**

_____
DAVID FOLSOM
UNITED STATES DISTRICT JUDGE